Please be seated and Ms. Harrell we'll be happy to hear from you. Good morning Judge Wilkinson and may it please the court. I'm Emily Harrell. I'm here today on behalf of Mr. Yukome and Mr. Yukome has raised some arguments regarding the challenge to the sufficiency of the evidence but I'd like to focus my arguments on the jury instruction issue which I'm sure that what you're primarily interested in. Assuming that the plain error standard of review applies Mr. Yukome and of course by extension Mr. Flores-Reyes. Plain error or invited error or both plain error and invited error? I don't think it can be invited error for a couple of reasons. What am I supposed to do with the statement that the council made oh you don't need to re-instruct the jury or what am I supposed to do with that? I don't think it can be considered invited error because. Why wouldn't that imply that the instructions were okay? Well the instructions. Or that any errors were really of a trivial nature. The problem you face your honor is there is absolutely no way to know whether the correction that the judge made that was placed in the written instructions was actually relied upon or read by the jurors once they were provided the written instructions. Honestly you know you it is a lengthy jury jury trial and about a set of perfectly appalling murders and we're going you're going you want us to reverse the entire result of that trial based on less than two lines of text in 70 pages of written instructions and we are just to take the entire effort that's been put into the trial the seating of the jury the calling of witnesses the jury's deliberations and throw that aside and because of two lines and a 70 page opinion. I believe it's warranted your honor because it is a fatal variance and it's a possibility that that Mr. that the jury could have convicted him on the lesser offense of conspiracy based on the court's instruction. But we'll talk about the oral instructions here. That's correct. Written ones had the correct information in it. Again I'll emphasize your honor there's no way to know whether those written instructions which contained the correct. Was it objected to? I mean when you think about the practical effect of when you see something everybody's in the court. Now you are suggesting the jury heard all this and both nobody really picked up on it until eventually one of the defense counsel picked up on one government picked up on the other one and brought it out and it would have been the judge seems to me was very careful in this case took took his time and gave the opportunity to respond. No one asked him to go back and reinstruct the jury on those charges. You probably didn't need any more instruction on that. It didn't need more emphasis on it. Uh certainly not the defense counsel and um it's it's it's an odd case and I think Judge Wilkinson's alluded to the fact you got 70 pages took two and a half hours to read it. Uh that would be challenging to me at least to do that. Uh and he did emphasize listen because you do hear it but he was given copies of the instructions and in those I mean the written stuff is right there. If anybody had any confusion I mean one of the I could hear one of the jurors says oh he said this but well it's written right here. Uh you know that would be there. I just don't know of a case like this in which you have this kind of corrective behavior but you are saying he corrected it but not enough is what it sounds like to me. Yes your honor. I think the certainly rule 30 provides in the case law that I cited in my reply brief provides that corrections to instructions should be given an open court so that not only the defendant and attorney have a chance to read and hear and assess the instruction given but also said that the written instructions were to be the definitive ones. There's nothing in this case your honor. And the other thing is um you want you make a big deal about um conspiracy here but these folks weren't just conspiring to commit these horrific murders. They were in it up to their eyeballs and there's a wealth of evidence before the jury that these three individuals were either principals in these horrific homicides or at best were still aiders and betters. They weren't conspirators. They were people who were in it and up to it and and killed in order to get a promotion and ingratiate themselves with their superiors and a perfectly deadly enterprise. And the jury saw that and the probability that they convicted them on a conspiracy count as opposed to seeing their active involvement in these horrible acts. The probability that the jury went that direction is between zero and nil respectfully judge Wilkinson. I disagree. I think that there is sufficient evidence particularly as to Mr Yacome where he could have been convicted based on a conspiracy offense. He's only um indicted as to this and implicated in this one offense and there's plenty of evidence um that one could take to establish his involvement in a conspiracy. So I would take a different tact on that.  you mean as opposed to aiding and abetting? Yes sir. I thought you call me went to the scene and actually participated. He did but there if if the jury were to disregard that they could also say he was involved in the conspiracy of planning disregard the vivid description of what took place is what is a 14 year old uh person who was talking to the police and had to be taken out. Is that the issue? I mean he was knifed and did you call me actually himself apply some knife wounds to the child. Your honor there were some knives involved and there was there evidence that you call me himself applied some knife wounds. Actually no. Your honor the evidence. I thought that after he had they were killing him he came on and he himself did some there's and I hate to get down into the nitty gritty details. That's what the jury heard. You know there was a machete involved and there were knives involved and the government star witness specifically talked about two different instruments and he talked about the Katra, the government star witness talked about his and Mr Yacoma's involvement with the machete which he said they used to strike the victim. And as Mr Yacoma also attempted to strangle him, the handle broke the other individuals involved in. So you don't think that was participating? I mean you think he thought he was just he was just trying to injure this young man. My position is that those could be taken as part of an assault um that as part of a corte assault. So that would be my position. Wasn't it a rule of Ms 13 that this uh 14 year old would have to be killed? It was a rule and and you call me was was he a homeboy at that point? He was a homeboy but there's no evidence and I think that there is evidence that perhaps he became a homeboy without committing a murder. So my thought would be well I'm not talking about whether he achieved homeboy but he was a homeboy status which is a pretty high up in that organization and he's in the car and he's going down to the scene and the rule is that this young man has to be killed and he gets in there with a machete or whatever and he's trying to choke him around the neck obviously to carry out the rule. I mean I don't quite understand where you would argue that a jury is considering simply a conspiracy charge here. I think there's sufficient evidence to establish his involvement in a Every crime that's actually committed has inherent a conspiracy because you're planning to do it but the fact that it was actually done in this case . . . If you take the position that his homeboy status in the organization established that he would be involved in carrying out the need to eliminate . . . A great many people who commit a crime, not everyone, but a great many people talk about it beforehand but that doesn't mean that the jury could have convicted them of a conspiracy when they went a great deal farther than talking about it or conspiring about it or whatever and it's the actuality of what happened here not the some sort of conspiratorial planning that was front and center before the jury. That's what they heard. They heard and a lot of it was kept out because the trial judge didn't want to run across a 403 problem but what the jury heard was not about conspiracy. The jury heard about the commission of the crime, not the conspiracy to commit but the commission. It's a tough case. It's a tough case for you but that doesn't lessen my appreciation.  Mr. Goldman, we'd be happy to hear from you. Thank you, Your Honor. Peter Goldman on behalf of Breon Alexander Contreras-Avalos. It's a pleasure to be here this morning. May it please the court. I'm going to be brief. I've asked for brief time and I would like to just review with the court pursuant to my argument three points. The first, I think it's worthwhile to review the standard and the interplay between Rule 29A and Rule 33A. Quoting from this court's case in Souder which references this court's decision in United States versus Wilson, 118, 5th, 3rd, 228 from 1997. Reading from Souder, contrary to the government's suggestion, however, Wilson does not hold that a trial court is foreclosed from granting a motion for a new trial in every case where the evidence is legally sufficient to support a jury's verdict. While Wilson teaches that a district court should exercise its discretion to grant a new trial sparingly and that the district court should grant a new trial based on the weight of evidence only when the evidence weighs heavily against the verdict. We evaluate such a ruling against the backdrop of the district court's broad power to independently weigh the evidence when considering such a motion as well as the deferential standard of review, we must apply to that decision. My point being that unlike Rule 29A and Rule 33A motion, the district court can and should make its own credibility determinations and review the evidence. Now, this court reviews the district court's denial of the 33A motion on an abuse of discretion standard. With that said, the next point I'd like to make very simply is, and that relates my two points, I'd like to read very briefly what began this trial which was the testimony of the government's handpicked expert, Sergeant Ricardo Guzman from the Houston Police Department about the credibility and the need for corroboration of MS-13 cooperators. Question, and also getting back to when they lied to you as law enforcement, you have learned that it's best to not just rely on their word, correct? Answer, that's right. Question, and to seek other evidence that can corroborate one way or the other what they are saying, answer, yes, ma'am. That was the government's expert that began this case. I have very little time, so briefly I think, and you've read my brief, read the brief, my argument very simply, the case against Mr. Contreras of Valos was not based on any physical or forensic evidence. The government . . . this was a six-year investigation. The government had numerous government attorneys, FBI DEA agents, crime scene investigators, police DNA investigators, and other federal and state personnel, but in this case there was . . . the government was unable to produce any physical evidence, forensic evidence, weapons, drugs, DNA evidence. Thank you, sir. We appreciate it. Thank you, and I'll reserve a word for rebuttal. Judge Pritzker. You have reserved a minute for rebuttal as well.  Judge Pritzker. We'll hear from him. Mr. Sachs, let's hear your view of that. Ethan Sachs. Thank you. May it please the Court, Ethan Sachs on behalf of the United States. I'd like to start briefly with the jury instruction issue we've been talking about. I think your Honor's discussion with my friend on the other side really gets to the key issues here. Just to clarify, Moore is the case that we think lays out when an error in the jury instruction can rise to a constructive amendment. What Moore says is you consider the totality of the circumstances, and whether those circumstances would allow a reasonable jury . . . This issue comes up occasionally, but other circuits have faced what were alleged to be variances between written and oral instructions. And when the written instructions were submitted and were conveyed to be definitive, the other . . . as I understand it, the other circuits have said that there's certainly no plain error in those sorts of circumstances. So I think if we were to say that there was a fatal variance in what happened here, that we would be creating a circuit split in terms of the way that other circuits have approached this question about . . . because, you know, it's not an unusual thing for . . . written instructions, of course, aren't always given. But where they are, it's not an unusual thing that they don't parrot verbatim what was said in court. And if any little difference there was thought to be some kind of fatal variance, that would be a pretty unsettling holding. See what I'm saying? Yes, Your Honor, absolutely. We agree with that completely, especially in light of the context of how minor the mistake here was. I mean, there's two words or references to the word conspiracy, and as Your Honors alluded to earlier . . . I was going to echo what . . .  and go over this without being impressed with the manner in which Judge Zennis handled this trial. She's a very good judge, I might add. And she, not withstanding the horrific nature of these crimes, she bent over backwards to make certain that there was a fair trial here, as she should have done. Sometimes, you like to respect good work on the part of the district judges. They value their craft as much as we value ours. And this district judge did a fine job. Well, we agree, Your Honor, that the judge here was very thorough in the district court in understanding of all objections. In fact, this issue only came to rise because the district court judge, after reading the jury instructions, elicited comments from both sides and ensured that there wasn't anything substantial or serious enough worth to recall the jury. So, I think we agree that throughout the trial, the judge was conscientious and aware of any potential concerns, and certainly none arose to the level of the amendment. Judge, do you have any further questions on this? We have no further questions. We thank you. Great. Thank you very much. Ms. Harrell? Just briefly, Your Honor. You mentioned several courts looking at the issue of the jury instructions and perhaps finding plain error or not. I guess I would say that the error exists in the fact that there's absolutely no way to determine whether the jury read and relied on the instructions. Well, sure there's a way to determine. You can look at the evidence that was presented to the jury. And there's specific findings. They made some specific findings in this case. They made specific findings as to count one.  And I believe my position on that would be the counts are to be considered separately. Of course. And so, I don't think you can automatically transfer the finding made on count one to the Vicar murder on count five. Judge, didn't the district judge . . . and I'm asking you, I can't remember. Did the district judge go through the different counts and explain the different counts? Yes. And that's where the error arose. And the court did not include a Pinkerton count, right? I'm sorry? The court did not include a conspiracy count. Correct, as to count five. No, I'm talking about all counts. She did include a Pinkerton count as related to count one. So, she included that charge there. But then the whole issue arose at the charge conference because the government also wanted a Pinkerton charge as to count five. And counsel objected. And then it evolved into an Apprendi issue. Well, if I include this conspiracy language, then I've really got to consider whether we're creating an Apprendi issue. And so, they agreed to take it out. And then there was an inadvertent inclusion of it in the charge that she read to the jury the next day on count five. So, that's where the error was. Well, I know where the error was. But I'm trying to put myself in the position. You're focusing heavily on the oral presentation. And it was a lengthy presentation. And traditionally, and I must say, I confess, I didn't go back and look at the beginning, but usually the judge outlines the various counts that are being presented to the jury and describes them generally and then does it in more detail later. But I was asking whether that was done in this case. Yes, Your Honor. In her opening charge, like at the very beginning of the trial, she just gave a very brief overview of counts, obviously. But then when she went to charge the jury, and she charged before they presented closing argument. So, when she charged the jury as to all of the counts, she did include a Pinkerton charge as related to count one. But again, I would just circle back very quickly to the fact that even though the jury made those findings, you have no way of knowing whether they read and relied on the corrected instruction they were given. She didn't poll the jury when they came back in. Contrary to the government's argument in their brief, she didn't tell them, hey, rely primarily on these written instructions. That was not . . . those things did not happen. So, thank you, Your Honors. Thank you. Mr. Goldman? Your Honors, briefly, from Mr. Contreras Avalos's point of view, the record of this case is very strange. The entire conviction of Mr. . . . the evidence against my client was based on the testimony of cooperators, which I realize that there was a . . . I understand. You know, the jury knew this, and as much hay could be made of it. The jury makes the assessment. You and I both could make the assessment. We know this is a hardened criminal that's testifying, and we conclude he's testifying because he's going to get a break. So, the cross-examination goes like, well, how do we know you're truthful now? I mean, this type of thing. The jury makes that assessment, and there was plenty of evidence, oral evidence. I mean, you obviously would like some forensic evidence presented, but that isn't totally unusual. Correct, Your Honor. You're right. What is unusual about this case is that the government's expert, the first witness of the case said, these people, cooperators, cannot be believed without corroboration. That corroboration is not in the record of this case against my client. Respectfully, Smith, I agree with you . . . Well, that's his opinion. I mean, if a jury believes him, the jury believes him. He says, oh, you can't believe them because they're criminals. They've been at this a long time. They're in a very lethal gang. They've done some very bad things, and they're in here testifying, trying to save their soul. So the expert says, don't trust them unless they're corroborated. Well, that doesn't bind that person. It doesn't even bind the jury. It doesn't bind the jury, I respectfully submit. It creates a problematic record to convict . . . I don't even know if it's problematic. It seems to me that's like an expert saying, basically, be careful. These people are criminals. They were involved in all of this, and they're now trying to save their skins. This is what the jury knows and has to assess, but that doesn't deny a person evaluating the testimony based on how it's said, what's said, how the witness acts, how it's consistent with other witnesses' testimony, how it's consistent with the overall structure of the case. These things the jury sees, and it doesn't look like they had much trouble on this case.    . . . . .         . . . . . . . . . . . .  . . . . . .  .  I'm sure you informed them well about it, But it seemed to me that it's hard to get the leaders of these organizations who isolate themselves from the actual conduct. They'll flick their finger and give the green light, and two people are killed upon sight, and they say, oh, you can't get him who flicked his finger for the green light because there's no forensic evidence. A as a matter of fact, he didn't even say kill him. He just went like this, this is the green light. That's the way they operate. I understand, Your Honor. I appreciate the court's position. Thank you very much. Thank you. I see you're court appointed. I mentioned earlier it was a tough case, but I really am all the more appreciative for your willingness to step forward and provide what I think is a very able defense. So thank you both. You really do have the court's appreciation. We'll come down and we'll adjourn court and come down and greet counsel. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, James Andrew Wynn